UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EILEEN POTVIN, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION |
| | ) NO. 14-10598-JGD |
| SPEEDWAY LLC, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

September 8, 2017

DEIN, U.S.M.J.

## I. INTRODUCTION

The plaintiff, Eileen Potvin, has brought this negligence action against Speedway LLC, the operator of a gas station on Andover Street in Tewksbury, Massachusetts. Ms. Potvin fell and injured herself when, she believes, the heel of her shoe got caught in a groove, known as a positive limiting barrier ("PLB"), which encircled the gas pump. The PLB is required by Massachusetts law. This matter is before the court on the defendant's Motion for Summary Judgment. (Docket No. 57). Therein, Speedway contends that it is entitled to judgment as a matter of law because (1) the PLB was not a hazard which required a warning or remedy, (2) even if it was a hazard, Speedway owed no duty to warn of such an open and obvious hazard, and (3) plaintiff failed to establish that Speedway breached its duty of care because her expert's opinion "is mere guesswork that is wholly unsupported by science or data." (Id.). For

the reasons detailed herein, the undisputed facts establish that Speedway is entitled to judgment as a matter of law, and the defendant's motion for summary judgment is ALLOWED.

## II. **STATEMENT OF FACTS**[1]

The following facts are undisputed unless otherwise indicated.

### **The Accident**

Eileen Potvin alleges that on January 20, 2012, between 2:30 p.m. and 3:00 p.m., she was injured when she tripped and fell at the Speedway self-service gas station and convenience store located on Andover Street in Tewksbury, Massachusetts. (DF ¶ 1; PF ¶ 1). On the day of the accident, the plaintiff picked up her boyfriend at work, and then stopped at the Speedway to purchase gas. (DF ¶ 2; PF ¶ 2). She pulled up to a gas pump, with the driver's side near the pump, got out of her car and walked toward the front of her car to look for a squeegee to clear her car windshield. (DF ¶ 3; PF ¶ 3). Her boyfriend went inside to pay for the gas, which he intended to pump when he returned. (DF ¶ 4; PF ¶ 3).

Ms. Potvin was unable to locate a squeegee, so she reversed direction, and while walking backwards toward her car, lost her balance and fell, landing on her right hip. (DF ¶¶ 5-6; PF ¶ 4). Ms. Potvin did not actually see how she fell, but she believes that the side of the heel of her right shoe "got wedged" in a groove in the concrete. (DF ¶¶ 5-8; PF ¶ 4). The

---

[1] Unless otherwise indicated, the facts are derived from Defendant's Concise Statement of Material Facts in Support of its Motion for Summary Judgment (Docket No. 59) ("DF") and the exhibits attached to its Memorandum of Law in Support of its Motion for Summary Judgment (Docket No. 58) ("Def. Mem." and "Def. Ex. ___"); Plaintiff's Concise Statement of Material Facts in Support of her Opposition to Defendant, Speedway LLC's, Motion for Summary Judgment (Docket No. 62) ("PF"), and the exhibits attached to her Memorandum of Law in Support of Her Opposition to Defendant, Speedway LLC's, Motion for Summary Judgment (Docket No. 61) ("Pl. Mem." and "Pl. Ex. ___").

groove is known as a positive limiting barrier ("PLB") and is required by Massachusetts law. (DF ¶ 9; PF ¶ 6).

## Positive Limiting Barriers

At the time of the accident, 527 CMR § 5.08(5) authorized the Department of Fire Services ("DFS" or "Fire Department") to approve plans for self-service gas stations in Massachusetts. (DF ¶ 10; PF ¶ 7).[2] The Fire Department required that PLBs be installed at all self-service gas stations in the Commonwealth prior to those gas stations being approved for operation. (DF ¶ 11; PF ¶ 8). PLBs are grooves in the concrete pad surrounding the dispensing island and the dispensers. (DF ¶ 12; PF ¶ 9). They are designed to contain a five gallon spill of flammable liquids within the area of the outer groove of the PLB, as that is the limit of the area protected by the fire suppression system. (DF ¶ 13; PF ¶ 9). According to DFS guidelines, there must be five concentric grooves surrounding the gasoline pumps, and the grooves must be cut to a minimum of three quarters of an inch in width, and three quarters of an inch in depth. (DF ¶ 14; PF ¶ 10; Def. Ex. B (Beaudin Dep.) at 39-40).[3] The PLBs at Speedway measured seven-eighths of an inch wide, according to the plaintiff's expert. (PF ¶ 17). The guidelines do not prohibit the painting of the PLBs a different color. (Id. ¶ 11). While certain signs are required by Department of Fire Services' guidelines, no signs warning of the existence of PLBs are either required, or prohibited, by the guidelines. (See Def. Ex. B (Beaudin Dep.) at Ex. 1, ¶¶ 24-26; PF ¶ 12; DF ¶ 20).

---

[2] On January 1, 2015, Massachusetts adopted the 2012 version of the National Fire Protection Code, so the applicable regulation can now be found at 527 CMR 1.00, § 42.7.4.5.

[3] A picture of the PLB is found at Def. Ex. B (Beaudin Dep.) at Appendix B.

[3]

The PLB requirement was in effect when the prior owner of the property at issue in this litigation renovated the site in 1998. (DF ¶ 16). The Fire Department had approved the design of the PLBs before the gas station opened, and its approval remained in effect after the property was transferred to Speedway. (Id. ¶¶ 17-19).

Reading the record in the light most favorable to the plaintiff, in the two years prior to Ms. Potvin's fall, there were two incidents reported to Speedway in all of Massachusetts involving people tripping or falling in the area of "grooves" near the gas pumps and/or the PLBs.[4] (See Pl. Ex. 2 (Def. Second Suppl. Resp. to Pl. Req. for Prod. of Docs.) at Suppl. Resp. 5B). On September 13, 2010, a woman at a Saugus gas station reported having her heel caught in a cement groove when she was getting into a vehicle on the passenger side at a gas pump. (Id. at "Customer Statement of Incident"). On December 6, 2010, a woman at a gas station in Worcester reported that she had "tripped on the grooves by pump 3." (Id. at "Customer Information & Statement"). According to the representative of the Fire Department who was deposed in this case, the Fire Department had not had any complaints that the PLBs were tripping hazards. (Def. Ex. B (Beaudin Dep.) at 37).

### Plaintiff's Expert

The plaintiff has designated Steven Frederickson as her expert. He is a licensed civil engineer who is employed by the City of Beverly as a director of municipal inspections, and is also self-employed as an engineering consultant. (PF ¶¶ 13-14). Mr. Frederickson has had no

---

[4] The defendant argues that the plaintiff has failed to establish that these incidents were in any way similar to the conditions surrounding her fall. (See Def. Reply Mem. (Docket No. 64) at 1-2). Nevertheless, for purposes of this motion for summary judgment, this court will assume that these two incidents reflect conditions similar to that in existence at Speedway at the time relevant to this case.

experience with PLBs or, apparently, self-service gas stations, but extrapolated from regulations concerning other public spaces to evaluate the conditions at issue in this litigation. (See DF ¶ 36). Mr. Frederickson concluded that optimally the grooves should have been 1/2" wide but the regulations required that they be 3/4" wide. He found that the grooves were, in fact, 7/8" - 1" wide, and opined that as a result additional signage and/or visual warnings should have been provided. (See Pl. Ex. 6 (Frederickson Report) at 9). The plaintiff does not base her negligence claim on the width of the grooves in and of themselves. Rather, she argues, in light of the "exceeded width of the grooves, signage and/or a visual warning, such as a painted surface, should have been provided to pedestrians." (Pl. Mem. at 4). As detailed below, Mr. Frederickson's opinion does not defeat the motion for summary judgment since there was no duty to warn against the obvious and open condition as a matter of law.

Mr. Frederickson opined that pursuant to the definitions in the Massachusetts Building Code, the area of the PLBs qualifies as an "exit discharge" since it is "part of the means of egress from the building," and that as an "exit discharge" the Building Code requires that "it must be maintained." (See DF ¶ 21; Pl. Ex. 6 at 3).[5] He then concluded that, since the Building Code "is silent on what constitutes maintenance[,]" he would look to the American Society of Testing and Materials (ASTM) Standard Practice of Safe Walking Surfaces (ASTM F-1637), because it is "[t]he most widely recognized standard for safe walking surfaces[.]" (Pl. Ex. 6 at 3).

---

[5] "Exit discharge" is defined in the Massachusetts Building Code as "[t]hat portion of a means of egress between the termination of an exit and a public way." (Pl. Ex. 6 at 3). Mr. Frederickson makes no attempt to explain why the area surrounding gasoline pumps qualifies as "a means of egress."

However, Mr. Frederickson admits that the ASTM standards do not apply to PLBs, he does not know whether Massachusetts has adopted any portion of the ASTM's various standards, and the ASTM does not have a section on grooves. (See DF ¶ 25).

Mr. Frederickson opined that the ASTM standard applicable to grates was relevant in the instant case. (Pl. Ex. 6 at 5). A grate is defined as "framework of latticed or parallel bars that prevents large objects from falling through a drainage inlet but permits water and some debris to fall through the slots." (Id.) The ASTM standard provides that grates should not have openings wider that 1/2" in the direction of predominant travel. (Id.) As noted above, Fire Department regulations required that the PLB grooves be 3/4" wide, and 3/4" deep. Other than saying that they are "similar," Mr. Frederickson does not explain why the requirements for grates should apply to PLBs. Such an explanation is needed because the two are not the same. For example, while spacing of the grate may be of particular significance since shoe heels can fall through grates into open space, they cannot fall through concrete grooves. In any event, Mr. Fredrickson did implicitly recognize that DFS guidelines relating to PLBs would take precedence over ASTM standards, and does not challenge the fact that the width of the grooves should have complied with Fire Department standards. (See DF ¶ 27; Def. Ex. C (Frederickson Dep.) at 70).

According to Mr. Frederickson, he "did not see any sign of unusual deterioration of the pavement, other than minor worn edges of the grooves." (Pl. Ex. 6 at 3). However, he also found that the grooves at the property ranged from 7/8" - 1+" wide. He concluded that "[g]iven the recognized danger of a walking surface with grooves in excess [o]f 1/2", the 3/4" requirement of DFS should not have been exceeded." (Pl. Ex. 6 at 9). Significantly, neither Mr.

Frederickson nor the plaintiff argue that the defendant was negligent in having the slightly wider grooves, and there is no contention that the fact that the grooves may have been 1" as opposed to 3/4" wide caused the plaintiff's accident. Rather, it is Mr. Frederickson's opinion that "[g]iven the hazard presented by the positive limiting barrier," "signage and/or visual warning (such as a painted surface) should have been provided to pedestrians." (Pl. Ex. 6 at 9, ¶ 5; see also Pl. Mem. at 8 ("Defendant breached a duty to warn the Plaintiff of the hazard posed by the PLB's, which exceeded the required measurement of three quarters of an inch and caused the Plaintiff to trip and fall")).

In support of his opinion that visual warnings were appropriate, Mr. Frederickson cites to ASTM F-1637.10. That provision in relevant part reads as follows:

> 10.1 The use of visual cues such as warnings, accent lighting, handrails, contrast painting, and other cues to improve the safety of walkway transitions are recognized as effective controls in some applications. However, such cues or warnings do not necessarily negate the need for safe design construction.

(See Pl. Ex. 6 at 5). There are no specific standards requiring or suggesting signage when grooves are more than 1/2" wide. According to the plaintiff, "[t]o formulate this opinion, Mr. Frederickson relied on his understanding of 'sound engineering practice,' based on his thirty-two years of experience as an engineer and references to relevant regulations and standards." (PF ¶ 18). The defendant strongly objects to Mr. Frederickson's testimony and argues that it lacks any factual or legal support.

Additional facts will be provided below where appropriate.

## III. ANALYSIS

### A. Standard of Review – Summary Judgment

"The role of summary judgment is 'to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" PC Interiors, Ltd. v. J. Tucci Constr. Co., 794 F. Supp. 2d 274, 275 (D. Mass. 2011) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)) (additional citation omitted). The burden is upon the moving party to show, based upon the discovery and disclosure materials on file, and any affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'" Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). "A fact is 'material' only if it possesses the capacity to sway the outcome of the litigation under the applicable law." Id. (quotations, punctuation and citations omitted).

"Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue." PC Interiors, Ltd., 794 F. Supp. 2d at 275. The opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841-42 (1st Cir. 1993). Accordingly, "the nonmoving party 'may not rest upon mere allegation or denials of his pleading[,]'" but must set forth specific facts showing that there is a genuine issue for trial. Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)). The court affords "no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is

less than significantly probative." Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011) (internal quotation marks and citation omitted). Rather, "[w]here, as here, the nonmovant bears the burden of proof on the dispositive issue, it must point to 'competent evidence' and 'specific facts' to stave off summary judgment." Id. (citation omitted).

Applying these principles to the instant case compels the conclusion that the defendant's motion for summary judgment must be allowed.

### B. Standard of Review – Negligence

"Before liability for negligence can be imposed, there must first be a legal duty owed by the defendant to the plaintiff, and a breach of that duty proximately resulting in the injury." Dos Santos v. Coleta, 465 Mass. 148, 154, 987 N.E.2d 1187, 1192 (2013) (quoting Davis v. Westwood Group, 420 Mass. 739, 742–43, 652 N.E.2d 567, 569 (1995)). See also Docos v. John Moriarty & Assoc., Inc., 78 Mass. App. Ct. 638, 640, 940 N.E.2d 501, 504 (2011) (to prevail on a claim of negligence, plaintiff must "establish that the defendant owed [her] a legal duty, that the defendant breached that duty, and that the breach proximately caused [her] injuries."). The plaintiff bears the burden of proof on each element of her negligence claim. See Glidden v. Maglio, 430 Mass. 694, 696, 722 N.E.2d 971, 973 (2000). In the instant case, this court finds that plaintiff has failed to establish that the defendant breached its duty. Therefore, the defendant's motion for summary judgment will be allowed.

The parties agree on the applicable standard that is to be applied in the instant case, although they obviously disagree as to its application to the undisputed facts. As the Court explained in Dos Santos v. Coleta, "[a]n owner or possessor of land owes a common-law duty of

reasonable care to all persons lawfully on the premises." Dos Santos, 465 Mass. at 154, 987 N.E.2d at 1192 (citing Davis, 420 Mass. at 743, 652 N.E.2d at 569). This duty includes an obligation (1) to maintain "the property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk"; and an obligation (2) "to warn visitors of any unreasonable dangers of which the landowner is aware or reasonably should be aware." Id. (internal citations and quotations omitted). "However, landowners are relieved of the duty to warn of open and obvious dangers on their premises because it is not reasonably foreseeable that a visitor exercising (as the law presumes) reasonable care for his own safety would suffer injury from such blatant hazards." Id. (internal quotations and punctuation omitted). The rationale behind the holding that a landowner has no duty to warn of open and obvious dangers is that "'the warning would be superfluous for an ordinarily intelligent plaintiff.'" Id. (quoting Papadopoulos v. Target Corp., 457 Mass. 368, 379, 930 N.E.2d 142, 151 (2010)).

The fact that the danger is open and obvious, however, does not relieve a landowner of all responsibility, and there may be a duty to remedy an open and obvious condition. Id. at 155, 987 N.E.2d at 1192-93. Thus, "although a duty to warn of an open and obvious danger would be superfluous because an open and obvious danger provides its own warning, a landowner is not relieved from remedying that danger where he knows or has reason to know that lawful entrants may not heed the warning for a variety of reasons, including their own failure to exercise reasonable care. Id. at 157-58, 987 N.E.2d at 1194. However, "where the only viable theory of negligence is a negligent failure to warn, the open and obvious nature of the danger causing the injury will therefore relieve the landowner of any duty vis-à-vis that danger." Id. at

158, 987 N.E.2d at 1194-95. See also Cohen v. Elephant Rock Beach Club, Inc., 63 F. Supp. 3d 130, 146 (D. Mass. 2014) ("Where, as here, 'the only viable theory of negligence' is failure to warn, and not failure to remedy, the question of whether the danger was open and obvious is dispositive.") (citing Matouk v. Marriott Hotel Servs., Inc., Civ. No. 11–12294, 2013 WL 6152333, at *2 (D. Mass. Nov. 21, 2013)).

Finally, assuming that there is a duty of repair or remedy of a dangerous condition, a landowner is "not obliged to supply a place of maximum safety, but only one which would be safe to a person who exercises such minimum care as the circumstances reasonably indicate." Lyon v. Morphew, 424 Mass. 828, 833, 678 N.E.2d 1306, 1310 (1997) (quoting Gadowski v. Union Oil Co., 326 F.2d 524, 525 (1st Cir. 1964)). Applying these principles to the instant case compels the conclusion that the defendant's motion for summary judgment should be allowed.

### C. Speedway Did Not Breach its Duty of Care

As an initial matter, Speedway argues that it cannot be held liable for negligence because the PLBs located around the gas pumps are required by law. (See Def. Mem. at 2-3, 6-8). However, compliance with industry standards in and of itself is not sufficient to relieve a landowner of liability. See Upham v. Chateau De Ville Dinner Theatre, Inc., 380 Mass. 350, 353-54, 403 N.E.2d 384, 386-87 (1980) (adherence to trade standard for lighting theatres is not conclusive proof that theatre was not negligent in failing to adequately light steps); Quinn v. Morganelli, 73 Mass. App. Ct. 50, 53 n.4, 895 N.E.2d 507, 510 n.4 (2008) ("even if the defendants had presented proof that the step conformed to all applicable standards, such proof would not have entitled them to summary judgment" on claim that unmarked step-down from hallway to sunken living room created a hazardous condition). Rather, the issue is whether a

defendant exercised "reasonable care in all the circumstances" – a standard that "permits the fact finder to consider all relevant factors, including the requirements of the defendant's business." Upham, 380 Mass. at 354, 403 N.E.2d at 387. The undisputed material facts establish that Speedway exercised reasonable care in the circumstances.

A view of the PLBs establishes that they were clearly visible. (See Pl. Ex. 6 at 11-15). There were five concentric grooves which surrounded the gas pumps. Speedway did nothing to hide their existence, and they would have been seen by any person paying any attention to their whereabouts.[6] "Determining whether a danger is 'open and obvious' entails an objective inquiry into what would be obvious to a person of average intelligence, that is, a visitor with ordinary perception and judgment exercising reasonable care for his own safety." Elephant Rock Beach Club, Inc., 63 F. Supp. 3d at 143. While this court questions whether the PLBs even rise to the level of a "danger," the undisputed facts establish that the condition was open and obvious. Under such circumstances, no additional warning was necessary since "the warning provided by the open and obvious nature of the danger is by itself sufficient to relieve the property owner of its duty to protect visitors from dangerous conditions on the property." Papadopoulos, 457 Mass. at 379, 930 N.E.2d at 151. Cf. Quinn v. Morganelli, 73 Mass. App. Ct. at 54, 895 N.E.2d at 510 (if jury finds condition was "open and obvious," there may have been a duty to remedy, but not a duty to warn).[7]

---

[6] While the parties do not address the issue of whether the plaintiff has established causation, this court notes that there is no evidence that the addition of signs or a painted surface would have made any difference to the plaintiff who fell while walking backwards.

[7] In Quinn, relied on by the plaintiff, the court concluded that, based on the photographs in the record, "reasonable people may differ in their conclusions as to whether the step-down [between the hallway and a sunken living room] was obvious." Quinn, 73 Mass. App. Ct. at 54, 895 N.E.2d at 510. In the instant case, the photographs show that the PLBs were "open and obvious as a matter of law." Id.

[12]

The fact that two other people may have fallen at gas stations with PLBs in the two years before the plaintiff's accident does not compel a different result. Assuming, <u>arguendo</u>, that those situations are sufficiently comparable to the instant case to be relevant, the number is clearly insignificant given the number of people who visit a gas station every day.

As detailed above, plaintiff's only theory of liability is an alleged failure to warn. (<u>See</u> Pl. Mem. at 7 ("a jury could reasonably conclude that excessive measurements could be deemed an unreasonably unsafe condition <u>which would thus require a warning</u>." (emphasis added)). Since, as a matter of law, no additional warnings were necessary, the defendant's motion for summary judgment will be allowed.

### D. Sufficiency of Plaintiff's Expert's Testimony

The defendant takes strong exception to the testimony of plaintiff's expert, arguing that it fails to satisfy Rule 702 of the Federal Rules of Evidence, which "assigns to the trial judge the responsibility for ensuring that an expert's testimony as to scientific, technical, or other specialized knowledge 'both rests on a reliable foundation and is relevant to the task at hand.'" <u>McGovern v. Brigham & Women's Hosp.</u>, 584 F. Supp. 2d 418, 423 (D. Mass. 2008) (quoting <u>Hochen v. Bobst Group, Inc.</u>, 290 F.3d 446, 452 (1st Cir. 2002) (quoting <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579, 597, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)). This court agrees that there are serious gaps in the analysis which make the admissibility of Mr. Frederickson's testimony highly questionable. Not only does he lack any relevant experience, but he fails to explain why the standards on which he relies, which have not even been adopted in Massachusetts, should apply to the situation at the gas station. The only nexus seems to be that the standards relate to places where people walk. This court would be hard pressed to make the

findings required by Federal Rule of Evidence 702, that "the testimony is based on sufficient facts or data," or "is the product of reliable principles and methods" or that "the expert has reliably applied the principles and methods to the facts of the case." Nevertheless, the court does not have to make that final determination here. Read most generously, Mr. Frederickson has opined that it would have been safer if different types of warnings were given. However, the law is clear that a defendant cannot be found liable for failing to warn where, as here, the condition is open and obvious. The defendant is entitled to judgment as a matter of law.

## IV. CONCLUSION

For all the reasons detailed herein, Defendant's Motion for Summary Judgment (Docket No. 57) is ALLOWED.

/ s / Judith Gail Dein  
Judith Gail Dein  
United States Magistrate Judge